UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HOWARD SMALLWOOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-00404-JPH-DML |
| | ) |
| LT. DON WILLIAMS, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Howard Smallwood, an Indiana inmate, brought this action under 42 U.S.C. § 1983 alleging that the defendants violated his Eighth Amendment rights on October 22-23, 2017, by denying him the right to refuse a blood draw, using excessive force against him, and sexually assaulting him. Mr. Smallwood also alleges that defendant Dr. Talbot failed to adequately treat his injuries based on defendant Wexford of Indiana LLC's ("Wexford") policy or practice of providing constitutionally inadequate medical care.

The defendants have moved for summary judgment, arguing that Mr. Smallwood failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), before filing this lawsuit.[1] Because the designated evidence shows that Mr. Smallwood did not exhaust available administrative remedies before bringing this action, the defendants' motions for summary judgment, dkt. [49] and dkt. [57], are **granted**.

---

[1] Defendants also argue that Mr. Smallwood's suit is barred by the statute of limitations. Because the Court finds that Mr. Smallwood's failure to exhaust available administrative remedies bars his suit, the Court does not address Defendants' statute of limitations argument.

## I. Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II. Exhaustion Standard

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the PLRA, which requires that a prisoner exhaust available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

An inmate may not satisfy the PLRA's exhaustion requirement by exhausting administrative remedies *after* filing suit. *See id.* (noting that lawsuits are routinely dismissed when plaintiffs exhaust their administrative remedies while the litigation is pending).

As the party asserting the exhaustion defense, the defendants bear the burden of establishing that the administrative remedies upon which they rely were available to the plaintiff. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative

defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

### III. Facts

The events alleged in Mr. Smallwood's complaint occurred on October 22-23, 2017, while he was confined by the Indiana Department of Correction ("IDOC") at Pendleton Correctional Facility. The IDOC has a grievance process which is intended to permit inmates to resolve concerns and complaints relating to their conditions of confinement before filing suit in court. The grievance process consists of three steps. First, an inmate must file a formal grievance within 10 business days of the incident if informal attempts to resolve his concern fail. The grievance policy requires the inmate to provide evidence of his attempts to informally resolve the issue. The policy suggests request for interview forms or other correspondence as examples of acceptable evidence. Dkt. 59-2 at 8-9 ("Before filing a grievance, an offender is required to attempt to resolve a complaint informally and provide evidence . . . of the attempt."). Next, if the inmate is not satisfied with the response to the formal grievance, he may submit an appeal to the warden. Finally, if the inmate is not satisfied with the response from the warden or the warden's designee, he may file an appeal to the IDOC grievance manager. Exhaustion of the grievance procedure requires pursuing a grievance to the final step. Dkt. 46-3 at 8-14; dkt. 59-2 at 8-14.

Mr. Smallwood produced copies of two requests for interview he says he submitted to the facility superintendent on October 23, 2017, and October 31, 2017, as part of the informal

grievance process. Dkt. 64 at 4-5. IDOC grievance records for Mr. Smallwood reflect that he submitted a formal grievance regarding the October 22, 2017, incident on November 1, 2017. Dkt. 59-4. The return grievance stated: "There is no indication that you tried to informally resolve your complaint. If you have tried to resolve it informally, please fill out the grievance form to indicate that. If you have not tried to resolve it informally, you have five (5) days to begin that process." Dkt. 59-5. Mr. Smallwood failed to follow these instructions or to provide proof of his October 23, 2017, and October 31, 2017, requests for interview to show that he had completed the informal process. Instead, he waited until May 3, 2018, to raise the October 22, 2017, incident in an appeal of a separate grievance. Dkt. 59-6. The grievance was rejected because it was filed too late. Dkt. 59-7.

On May 16, 2018, Mr. Smallwood filed a lawsuit nearly identical to this suit. *Smallwood v. Williams*, et al., 1:18-cv-1506-RLY-MPB. The defendants moved for summary judgment on the basis that Mr. Smallwood had not exhausted available administrative remedies. Mr. Smallwood agreed and moved to voluntarily dismiss the lawsuit due to his failure to exhaust on October 29, 2018. *See* dkt. 44 in case no. 1:18-cv-1506-RLY-MPB.

Mr. Smallwood next submitted a request for interview form on November 5, 2018, to attempt to informally grieve the October 22, 2017, incident. It was rejected as untimely. Dkt. 59-8. Mr. Smallwood appealed, but the appeal was rejected both because it was untimely and because he had skipped the formal grievance step. Dkt. 59-9; dkt. 59-10.

Mr. Smallwood asserts that he was unable to navigate the grievance process due to his low IQ. In support of his argument, he provides an educational record from 1970 which calculated that Mr. Smallwood was approximately two years behind in development when he was six years old.

Dkt. 64 at 3. The record lists his "age level compared IQ" as 75 and his "grade lvl [sic] compared IQ" as 86. *Id.*

### IV. Discussion

Strict compliance is required with respect to exhaustion, and a prisoner must properly follow the prescribed administrative procedures in order to exhaust his remedies. *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006). The PLRA's exhaustion requirement is not subject to either waiver by a court or futility or inadequacy exceptions. *Booth v. Churner,* 532 U.S. 731, 741, n.6 (2001); *McCarthy v. Madigan,* 503 U.S. 140, 112 S. Ct. 1081 (1992) ("Where Congress specifically mandates, exhaustion is required.").

Mr. Smallwood did not timely complete the grievance process as the grievance policy required because he did not show at the time that he had attempted to informally grieve his complaint. He may have attempted an informal resolution, but even if he did, he did not attach proof of his efforts to his formal grievance—which is required by the grievance policy. When the grievance was rejected with information on how to cure the lack of evidence of an informal grievance, Mr. Smallwood could have returned the grievance with an explanation of his attempts at informal resolution. He did not do so.[2] He therefore did not strictly follow the required grievance process.

Mr. Smallwood next argues in his unsworn response brief that he did not fully understand the requirements of the grievance process due to his low IQ and that he was moved to several different cells after the October 22, 2017, incident which made it difficult for him to complete the

---

[2] Mr. Smallwood also acknowledged his failure to exhaust available administrative remedies when he moved to voluntarily dismiss his first lawsuit. *Smallwood v. Williams*, et al., 1:18-cv-1506-RLY-MPB, dkt. 44 at ¶ 6 ("Plaintiff admits that he was not fully completed in his exhaustion [of] administrative remedies prior to filing this action.").

grievance process. Dkt. 63 at 3. He also argues that prison staff often fail to respond to informal attempts to resolve a grievance. *Id.* at 2-4.

Mr. Smallwood was estimated to have an IQ between 75 and 86 in 1970. Aside from the 40-year-old IQ estimates, there is no evidence in the record that Mr. Smallwood was incapable of following the instructions on the returned grievance. His filings in this case have been coherent and he has responded appropriately to orders from the Court. And although he argues that sometimes officers would not pick up grievances from the restricted housing unit for a few days, Mr. Smallwood has provided no admissible evidence that he was prevented from filing a response to his returned grievance between its return on November 6, 2017, and his next submitted grievance form addressing the issue on May 3, 2018.

The record demonstrates that Mr. Smallwood failed to exhaust available administrative remedies. The consequence of these circumstances, in light of 42 U.S.C. § 1997e(a), is that this action should not have been brought and must now be dismissed without prejudice. *See Fluker v. County of Kankakee*, 741 F.3d 787, 791 (7th Cir. 2013) (summary judgment for failure to exhaust administrative remedies as required by Prison Litigation Reform Act should result in dismissal without prejudice), citing *Ford v. Johnson*, 362 F.3d 395, 400–01 (7th Cir. 2004).

## V. Conclusion

The defendants' motions for summary judgment, dkt. [49] and dkt. [57], are **granted**. Final judgment in accordance with this Order shall issue at this time.

**SO ORDERED.**

Date: 9/30/2021

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

HOWARD SMALLWOOD
900079
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Matthew Jacob Goldsmith
INDIANA ATTORNEY GENERAL
matthew.goldsmith@atg.in.gov

Margo Tucker
INDIANA ATTORNEY GENERAL
margo.tucker@atg.in.gov